**Reverse and Rendered and Opinion Filed June 3, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-00737-CV**

**BRENDA GAIL SUTTON LEVETZ, Appellant**
v.
**THOMAS MICHAEL SUTTON, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-03472-2009**

## OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion by Justice FitzGerald

This dispute between siblings Thomas Sutton and Brenda Levetz arises out of a mediated settlement agreement ("MSA") in this action and a corollary will contest pending in another county. Following a determination that Levetz had capacity to enter the MSA, the trial court signed a final judgment severing Sutton's breach of contract claim and transferring it to the county in which the will contest is pending. The court also adopted the MSA as the judgment of the court and ordered the disbursement of funds as provided in the agreement. In five issues on appeal, Levetz contends the trial court erred (1) in granting Sutton's motion to enforce the MSA, (2) in granting Sutton declaratory relief, (3) in allowing unqualified and unreliable expert testimony on the issue of capacity, (4) in excluding Levetz's testimony and the testimony of her expert, and (5) in severing and transferring the breach of contract claim. We conclude the trial court erred in granting the motion to enforce the MSA because the only element of the breach of

contract claim tried and considered by the court concerned Levetz's capacity to enter into the MSA. Because the issue of capacity is inextricably intertwined with the breach of contract claim, the trial court erred in severing the claim and transferring it to another county. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

The death of Sutton and Levetz's father was the genesis of this contentious dispute between brother and sister. After his father's death, Sutton initiated this action complaining that his father's December 18, 2008 will left a disproportionate share of the estate to his sister, and asserted claims of tortious interference, fraud, and breach of fiduciary duty. Levetz answered and moved to transfer venue of the suit to Bowie County "for convenience and in the interest of justice," because the application to probate the will and Sutton's will contest are pending in Bowie County.[1]

The trial court ordered the parties to mediation. The parties engaged in mediation on February 26, 2010, and ultimately reached a settlement. The settlement was memorialized in the MSA, which was signed by the parties, approved by their attorneys as to form, and filed with the court in accordance with Rule 11 of the rules of civil procedure.

Almost four months after the mediation, Levetz filed a motion to set aside the MSA, alleging her fibromyalgia triggered cognitive problems on the day of the mediation, which, coupled with sleep deprivation and her medications, resulted in a lack of capacity to enter into a binding agreement. Sutton moved to compel a mental examination of Levetz. Levetz argued that the examination should be conducted by a rheumatologist with expertise in fibromyalgia, but the trial court overruled her objection and ordered Levetz to submit to a psychiatric exam by

---

[1] Sutton's will contest challenges the will on the grounds of lack of capacity and undue influence.

Mitchell Dunn, M.D., a forensic psychiatrist. After evaluating Levetz, Dr. Dunn prepared a report concluding Levetz had the mental capacity to enter into binding contractual relationships on the day the MSA was signed.

Sutton amended his petition to include a claim for breach of contract and promissory estoppel, and prayed for damages, or alternatively, "such orders as necessary to compel Levetz to comply with the terms of [the MSA]". Sutton also filed a motion to enforce the MSA. The motion requested the court enter judgment that the MSA "is valid, in force and of full effect."

Sutton's motion to enforce the MSA and Levetz's motion to set aside the MSA were tried to the bench. During the hearing, both parties focused exclusively on the issue of Levetz's capacity to agree to the MSA. Dr. Dunn testified as to his conclusion that Levetz had the capacity to enter into the MSA. The trial judge refused to allow the mediator to testify about Levitz's demeanor and state of mind on the day the MSA was signed, and also excluded the testimony of Levitz's expert as not timely disclosed. When the hearing concluded, the court found Levetz had the mental capacity to agree to the MSA, denied her motion to set it aside, and granted Sutton's motion for enforcement.

Sutton then filed a motion to sever, transfer, and enter judgment, and asked the court to sever his breach of contract claim and transfer it to Bowie County. Sutton's proposed final judgment was signed by the trial court.

Levetz filed a motion for reconsideration, or alternatively, for new trial. Levetz argued that the court's judgment provided "inconsistent, irreconcilable" relief in that the court purported to transfer the breach of contract claim it had already ruled upon. Levetz further argued the evidence was legally insufficient to support Sutton's breach of contract claim because Sutton presented no evidence of the essential elements of a breach of contract claim. Finally, Levetz complained that Dr. Dunn's testimony had been erroneously admitted into evidence and her

–3–

testimony and that of her expert had been erroneously excluded. In response, Sutton argued that Levetz mischaracterized the court's ruling because "the Court was only deciding the enforceability of the [MSA]. The Court did not take up, and was not asked to take up, Sutton's claim for breach of contract and the resulting damages and attorney's fees."

Sutton then filed a motion to modify the final judgment. The motion recited that it was for the purpose of addressing issues raised by Levetz in her motion for reconsideration, and to "clarify the procedural aspects of [the] court's resolution of this matter." Sutton described the requested modifications to the court's judgment as follows:

- A specific statement by the Court that it was considering the parties' competing requests for declaratory judgment with regard to the enforceability of the [MSA];

- A specific statement by the court that it was considering only the parties' competing request[s] for declaratory judgment;

- Orders by the Court denying [Levitz's] request for declaratory judgment; and

- [An] order by the court that all claims that were the subject of the [MSA] are dismissed in accordance with the [MSA].[2]

The trial court denied Levetz's request for reconsideration and a new trial, granted Sutton's motion to modify the judgment, and signed a new final judgment. The final judgment grants Sutton's "request for declaratory judgment," adopts the MSA as part of the judgment, severs Sutton's breach of contract claim, and transfers the breach of contract claim to Bowie County. The judgment also orders that interpleaded funds in the registry of the court be disbursed to Sutton. Upon receipt of both parties' requests and proposed findings, the trial court made findings of fact and conclusions of law. This appeal followed.

**ANALYSIS**

---

[2] Neither party requested declaratory relief in either their pleadings or in their motions. The first mention of declaratory relief appears in Sutton's motion to modify the judgment where Sutton urges the court to treat the parties' respective motions as requests for declaratory relief.

–4–

**Severance and Venue**

In her fifth issue, Levetz asserts the trial court erred in severing the breach of contract claim and transferring it to Bowie County. Sutton responds that severance was proper because the MSA recites that it is performable in Bowie County and Levetz initially agreed to adjudicate the matter in Bowie County when she filed a motion to transfer venue.[3] We begin with the fifth issue because in the absence of severance there would be no final appealable order subject to our review. *See, e.g.*, *Schieffer v. Patterson*, 433 S.W.2d 418, 419 (Tex. 1968).

Rule 41 of the Texas Rules of Civil Procedure states that "[a]ny claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. The effect of a severance is to divide a lawsuit into two or more independent suits that will be adjudicated by distinct and separate judgments. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex.1985); *see also Beckham Grp., P.C. v. Snyder*, 315 S.W.3d 244, 245 (Tex. App. —Dallas 2010, no pet.). The controlling reasons for a severance are to effect justice, avoid prejudice, and for convenience. *See F.F.P. Oper. Partners v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007); *Guaranty Fed. Savs. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

In their administration of Rule 41, trial courts have broad authority and their decisions to grant or deny a severance will not be reversed on appeal absent an abuse of discretion. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). The discretion vested in trial courts is not, however, without limits. Theirs is "a sound and legal discretion within limits created by the circumstances of the particular case." *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 683 (1956). Such discretion may not be exercised contrary to legal rules and principles applicable in the particular case. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Del Valle Indep. Sch. Dist. v. Lopez*, 863 S.W.2d 507, 513 (Tex. App.—Austin 1993, writ denied).

---

[3] Levetz subsequently withdrew her motion to transfer venue.

Here, the trial court's severance necessarily implies a conclusion that Levetz's capacity to agree to the MSA and Sutton's claim that Levetz breached the MSA can properly be determined in independent lawsuits culminating in distinct and separate judgments. We disagree.

The capacity to agree to the MSA and the alleged breach of the MSA are so interwoven that they involve the same facts and issues. To recover on his breach of contract claim against Levetz, Sutton had to establish that (1) a valid contract existed; (2) he performed or tendered performance; (3) Levetz breached the contract; and (4) Sutton was damaged as a result of Levetz's breach. *See Winchek v. Am. Express Travel Related Servs. Co*., 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The elements required for the formation of a valid contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network, L.L.C*., 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). Levetz's claim that she lacked the mental capacity to assent is a defense to the formation of the contract. *See In re Morgan Stanley & Co., Inc*., 293 S.W.3d 182, 186 (Tex. 2009).

The trial court's severance did not avoid prejudice or further convenience. Instead, it separated interwoven issues that share facts and issues that should be tried together. *See Fuentes v. McFadden*, 825 S.W.2d 772, 779–80 (Tex. App.—El Paso 1992, no writ) (reversing severance and concluding severed claim interwoven with remaining action where same grounds asserted in severed claim were asserted as legal excuse to contract claim in remaining action); *Bentley Vill., Ltd. v. Nasits Bldg. Co.*, 736 S.W.2d 919, 922–23 (Tex. App.—Tyler 1987, no writ) (concluding trial court abused discretion in severing clam arising out of same contract that was subject of unsevered claims); *McWilliams v. Gilbert*, 715 S.W.2d 761, 764 (Tex. App.—Houston [14th Dist.] 1986, no writ) (reversing severance where unsevered claim sought equitable reformation

of part's obligation which would affect party's liability under the severed contract claim). Therefore, we conclude the trial court abused its discretion in severing the breach of contract claim.

Based on our review of the record, the transfer of the contract claim to Bowie County appears to be predicated solely on its severance from the instant case. Because we have concluded the severance was in error, the transfer of the claim as a result of the severance was also in error. Levetz's fifth issue is sustained.

Our determination that the severance order was erroneous does not deprive us with jurisdiction over the appeal. "'[A] judgment which possesses all of the attributes of finality can [not] be regarded as interlocutory merely because the court may have erred in ordering a severance which it had the power to grant.'" *Bird v. Lubricants, USA*, No. 2-06-061-CV, 2007 WL 2460352, at *3, (Tex. App.—Fort Worth Aug. 31, 2007, pet. denied) (mem. op.) (quoting *Pierce v. Reynolds*, 329 S.W.2d 76, 79, n.1 ( Tex. 1959)); *see also Rucker v. Bank One Tex., N.A.,* 36 S.W.3d 649, 652 (Tex. App.—Waco 2000, pet. denied) (holding determination of error in severance does not preclude consideration of remaining issues on appeal). Therefore, having concluded the severance and transfer constituted an abuse of discretion, we now turn to the remaining issues.

**Enforcement of the MSA**

In her first two issues, with multiple subparts, Levetz argues the trial court erred in granting relief on Sutton's motion to enforce the MSA. Levitz first argues there is insufficient evidence to support a breach of contract or the award of specific performance. Levetz also complains that the judgment does not conform to the pleadings and there is no evidence to support declaratory relief. Finally, Levetz asserts Sutton waived breach of contract as a ground to support the trial court's order because the trial court made no findings on the breach of contract

claim. We begin our inquiry by examining the sufficiency of the evidence to support breach of contract and specific performance.

In an appeal of a judgment rendered after a nonjury trial, a trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In conducting a legal sufficiency review of the evidence, we must consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding, if a reasonable fact finder could consider it, and disregard evidence contrary to the finding, unless a reasonable fact finder could not disregard it. *Id.* at 827. When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 385 (Tex. App.—Dallas 2003, pet. denied). We will sustain a legal sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

We review a trial court's conclusions of law de novo, and we will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's

conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id*.

The MSA provides for both parties' removal of personal property from the family home, the appointment of a mutually agreeable executor, dismissal of this case and the will contest, and the sale and division of real and personal property. The MSA further provides for the disbursement of certain insurance funds interpleaded into the registry of the court. The trial court's judgment adopts the MSA in its entirety, dismisses all claims other than the breach of contract claim and "request for declaratory judgment," and specifically orders that the $19,500 in the registry of the court be disbursed to Sutton. In essence, the trial court's judgment orders specific performance. *See, e.g., Gunter v. Empire Pipeline Corp.*, 310 S.W.3d 19, 22 (Tex. App.—Dallas, 2009 pet. denied) (concluding judgment essentially ordered specific performance of settlement agreement without proper proceedings, pleadings, and proof).

Specific performance is the remedy of requiring exact performance of a contract in the specific form in which it was made. BLACK'S LAW DICTIONARY 1138 (6th ed. 1990). The equitable remedy of specific performance may be awarded upon a showing of breach of contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). Specific performance is an alternative remedy to damages. *See Paciwest, Inc. v. Warner Alan Props., L.L.C.*, 266 S.W.3d 559, 575 (Tex. App. — Fort Worth 2008, pet. denied). A party seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation and (2) the readiness, willingness, and ability to perform at relevant times. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593–94, 601 (Tex. 2008*); see also 17090 Parkway, Ltd. v. McDavid,* 80 S.W.3d 252, 258 (Tex. App.—Dallas 2002, pet. denied). Therefore, our analysis turns on whether the

evidence establishes a breach of contract or other conditions upon which an award for specific performance might be properly predicated.

The difficulties in this case stem from the trial judge's use of a summary proceeding to enforce the MSA. It is well established that when consent to a written settlement agreement has been withdrawn, a court may not render an agreed judgment on the settlement agreement, but rather may enforce it only as a written contract. *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996). Significantly, "the law does not recognize the existence of any special summary proceeding for the enforcement of a written agreement, even one negotiated in the context of a mediation." *Gunter*, 310 S.W.3d at 22 (citing *Cadle Co. v. Castle*, 913 S.W.l2d 627, 631 (Tex. App.—Dallas 1995, writ denied)); *see also Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.—Houston [14th Dist.] 1995, writ denied) ("When the legislature enacted the ADR statute, it did not order the courts to follow a special procedure applicable only to mediated settlement agreements"). Thus, the party seeking enforcement of an agreement for which consent has been withdrawn must bring an action for breach of contract. *See Cadle*, 913 S.W.2d at 630. Like any other breach of contract claim, a claim for breach of settlement agreement is subject to the established procedures of pleading and proof. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009). A party against whom a claim for breach of contract has been asserted is entitled to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit factual disputes to a fact finder. *See Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied).

As previously noted, recovery on a breach of contract claim requires proof of a valid contract, performance or tendered performance, breach, and damages. *See Winchek*, 232 S.W.3d at 202. Although Sutton amended his petition to include a breach of contract claim, the summary proceeding did not address all elements requisite to recovery for breach of contract. Instead, the

hearing focused exclusively on whether Levetz had the capacity to agree to the MSA. Sutton did not argue or offer evidence that he performed the MSA, tendered performance, or was ready, willing, and able to perform. There was also no evidence that Levetz breached a material term of the MSA, or that Sutton suffered any damages. In short, there is no evidence in the record that Levetz breached the MSA or that Sutton was otherwise entitled to specific performance.

Significantly, the trial court's recitations in the final judgment describe the limited scope of the proceeding as involving '[a]ll matters in controversy concerning [Levetz's] capacity to enter into the [MSA]." The court concluded that "after hearing evidence and arguments of counsel . . . [Levetz] failed to demonstrate that she lacked capacity to enter into the [MSA]." In its findings of fact and conclusions of law, the court found, *inter alia*, the MSA is an enforceable contract under Texas law and as between the parties, the MSA was formed by a meeting of the minds and supported by consideration, and Levetz failed to establish she lacked the mental capacity to enter the agreement. These findings, and the evidence in the record, support only the first element of a breach of contract claim — the existence of a valid contract. *See Cessna Aircraft*, 213 S.W.3d at 465.

The fact that the trial court severed and transferred the breach of contract claim is further indication that there was no adjudication of breach. Yet, despite the recitations concerning the narrow scope of the hearing, and the severance and transfer of the breach of contract claim, the relief afforded in the judgment goes beyond the trial court's limited determination that the MSA is a valid and enforceable contract. Indeed, after concluding that the MSA is an enforceable contract, and expressly reserving the question of breach, the judgment then awards a remedy for breach in the form of specific performance. It is axiomatic, however, that a determination that an agreement is enforceable — i.e. capable of being enforced — does not equate to a determination that a party is entitled to specific performance. On this record, in the absence of evidence to

–11–

establish tendered performance, breach, or repudiation, there is insufficient evidence to support the award of specific performance. *See Pena v. Smith*, 321 S.W.3d 755, 758 (Tex. App.—Fort Worth 2010, no pet.) (concluding evidence legally insufficient to support action to enforce settlement agreement). Therefore, the trial court's judgment is in error. The challenges to the sufficiency of the evidence to support breach of contract and specific performance set forth in Levetz's first issue are sustained. We remand the case to the trial court to determine whether the entire case should be transferred to Bowie County or, if the court determines that the case should not be transferred to Bowie County, for a determination on the merits of the breach of contract claim. Because we have concluded the trial court erred in awarding specific performance, we need not consider Levetz's remaining issues. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

110737F.P05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

On Appeal from the 401st Judicial District Court, Collin County, Texas

No. 05-11-00737-CV     V.     Trial Court Cause No. 401-03472-2009.
Opinion delivered by Justice FitzGerald.

SUTTON, THOMAS MICHAEL, Appellee     Justices O'Neill and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

It is **ORDERED** that appellant SUTTON LEVETZ, BRENDA GAIL recover their costs of this appeal from appellee SUTTON, THOMAS MICHAEL.

Judgment entered June 3, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

–13–