**AFFIRM; and Opinion Filed November 19, 2014.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-13-01252-CV

**NATHAN WEILBACHER, Appellant**
**V.**
**MELODIE CRAFT, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 13-06130-J**

## MEMORANDUM OPINION

Before Justices O'Neill, Lang-Miers, and Brown
Opinion by Justice O'Neill

Appellee Melodie Craft is an attorney. She represented a party opposing appellant Nathan Weilbacher in litigation. Weilbacher sued Craft for fraud after her client allegedly breached an agreement to settle the litigation. The trial court granted Craft's motions for summary judgment and to sever the claims against her from the remaining claims in the lawsuit. In two issues, Weilbacher alleges the trial court erred in both rulings. Because we conclude that both summary judgment and severance were proper, we affirm the trial court's judgment. We issue this memorandum opinion because all matters are settled in law. *See* TEX. R. APP. P. 47.4.

### BACKGROUND

Weilbacher alleges that Kelly Jones, one of the defendants in the trial court, induced him to go to work for Digital Discovery f/k/a Digital Works LLC ("DDC") with promises of a salary, ownership in the company, and a share of its profits. When DDC and Jones terminated

Weilbacher's employment "unjustifiably without providing ownership and profits from DDC," Weilbacher filed suit. Craft represented DDC and Jones in negotiations with Weilbacher and his attorney Mark Ticer to settle the lawsuit. Although Craft sent Ticer a settlement agreement to which Weilbacher agreed and signed, neither Jones nor DDC ever signed the agreement. When Jones and DDC[1] failed to make the payments required by the agreement, Weilbacher amended his petition to plead claims for breach of the settlement agreement and fraud. After deposing Jones on these claims, Weilbacher amended his petition to add Craft as a defendant. Craft filed a traditional and no-evidence motion for summary judgment on Weilbacher's claims against her.[2] The trial court granted Craft's motion. Craft then moved to sever Weilbacher's claims against her from the claims still pending against Jones. The trial court also granted this motion, and severed Weilbacher's claims against Craft under a separate cause number. This appeal followed.

## STANDARDS OF REVIEW

We review the trial court's decision to grant a severance for abuse of discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

We review the trial court's summary judgment rulings de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A no-evidence motion for summary judgment asserts that there is no evidence of one or more essential elements of a claim upon which the opposing party would have the burden of proof at trial. *See Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682 (Tex. App.—Dallas 2000, no pet.). A no-

---

[1] After DDC filed for bankruptcy protection, litigation against it was stayed, and Weilbacher's claims against Jones were severed into a separate lawsuit. DDC was not a party to the summary judgment proceedings from which this appeal arises.

[2] Weilbacher explains that at the time of summary judgment, his only pending claims against Craft were for fraud and negligent misrepresentation. His appeal is limited to his fraud claim.

–2–

evidence summary judgment is essentially a pretrial directed verdict to which we apply the same legal sufficiency standard of review. *Gen. Mills Rests., Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.). A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged elements. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). In determining whether the nonmovant has met its burden, we review the evidence in the light most favorable to the nonmovant and resolve all doubts in its favor. *See Gen. Mills Rests., Inc.*, 12 S.W.3d at 832–33.

To prevail on a traditional motion for summary judgment, a defendant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See Espalin*, 27 S.W.3d at 682. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.* Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *Id.* Where, as here, the summary judgment does not state the grounds on which it was granted, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *Id.* If a movant does not show its entitlement to judgment as a matter of law, we must remand the case to the trial court for further proceedings. *Id.*

DISCUSSION

## 1. Summary judgment

In his second issue, Weilbacher contends the trial court erred by granting summary judgment on his fraud claims against Craft. He contends that he raised a genuine issue of material fact on the elements of fraud: (1) Craft made a material misrepresentation that was false; (2) Craft knew the representation was false, or made it recklessly as a positive assertion without any knowledge of its truth; (3) Craft intended to induce Weilbacher to act on the representation; and (4) Weilbacher justifiably relied on the representation and suffered injury. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). He argues that although Craft is immune from some claims, she can be held liable for fraud that is not part of the discharge of her duties to her client. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (cause of action could exist against attorney who knowingly commits fraudulent act outside scope of legal representation of client).

Weilbacher argues that the summary judgment evidence "establishes that Craft represented she had authority to enter into a settlement agreement and a settlement agreement had been reached." He relies on Ticer's summary judgment affidavit and the deposition testimony of both Craft and Jones. Ticer testified:

> At no time did Craft reveal or state that she had no authority to enter into a settlement agreement on behalf of her client, Jones. At all times, I relied on Craft's authority to act on behalf of Jones. My client and I relied on Craft's representations and conduct in agreement to a settlement with Jones and DDC. Craft had plenty of opportunity in her communications with me to advise that she had no authority or limited authority to enter into a settlement agreement on behalf of her client Jones.

In her deposition, Craft testified in response to several questions that "I had authority to send the draft" settlement agreement to Ticer. Jones, however, testified that he decided he

–4–

"could not do a personal guaranty" as part of a settlement; he intended any settlement funds must be paid by DDC. He testified that Craft did not have authority to enter into a settlement that included a personal guaranty:

> Q: Did Melodie Craft take any actions in her representation of you that were not authorized?
>
> A. For example?
>
> Q: Anything.
>
> A: Well, ultimately the settlement agreement, including the personal guaranty.

Craft cited to and attached Ticer's affidavit to her motion for summary judgment. In addition to the statements about reliance quoted above, Ticer testified:

> [I]t appears that Jones had no intent of honoring any settlement agreement and merely used the time to delay so he could sell DDC to another entity. Jones, through Craft, represented that the matter was settled even going so far as to get Weilbacher to execute and forward a settlement agreement. The representation of settlement was false according to Jones. The representation of a settlement was reasonably relied upon by Weilbacher, i.e., he signed the settlement agreement as requested. Jones intended for Weilbacher to act on the representation of a settlement by asking Weilbacher to sign the settlement agreement. Weilbacher suffered damages to the tune of a $160,000 settlement.

Weilbacher also relies on several letters and e-mails included in the summary judgment record. The record includes a letter dated September 21, 2009, to the trial court from a mediator. The mediator reported that the parties attended a mediation on September 15, 2009, and "the mediation has been successful and the litigation has been fully resolved by mutual agreement of all of the parties." The mediator also stated that "[c]ounsel are in the process of drafting formal settlement documents." The mediator's letter does not disclose any specific terms of the settlement. The record does not include any memorandum of settlement or any other writing reflecting the terms of the agreement reached at the mediation.

–5–

The following e-mail exchanges and correspondence are included in the record:

- September 16, 2009, e-mail from Craft to Ticer "to confirm agreement" to ten "settlement terms we discussed." Item one provided that a total payment of $160,000 would be made to Weilbacher in installments. Item seven stated, "Mr. Jones will personally guarantee the settlement payments." The message concluded, "If you believe the above is not accurate please advise immediately." An hour later, Craft sent a second message: "Enclosed is a settlement agreement for this matter. Look forward to hearing back [from] you." A few minutes later, Ticer responded: "I agree with the following additions . . .", suggesting additional language for four of the paragraphs.

- Fax cover sheet from Ticer to Craft dated September 21, 2009, attaching a total of ten pages and bearing the message, "Revisions."

- September 21 e-mail from Craft to Ticer stating that she cannot read Ticer's handwritten requested revisions, requesting that he send a redlined version or set up a call to discuss his changes; Ticer then sends an e-mail to "Delly Davis" stating "please set up";

- September 22 e-mail from Davis to Ticer, reporting:

  > I spoke with Melody [sic] and read all your corrections to her. She will redline your corrections in the document, send it to her client for review, and will get back with you. Where you indicated "All consideration is not listed: 1. Guarantee and 2. Positive reference and letter," Melody [sic] says it is in the agreement. She says to see Paragraph 2.3 for Guarantee and see Paragraph 7.2 for Positive reference and letter."

- September 25 e-mail from Craft to Ticer, again sending a draft settlement agreement that included Jones's personal guaranty. The e-mail reads, "Enclosed please find updated agreement."

- October 2 e-mail from Craft to Ticer, sending a draft settlement agreement that included Jones's personal guaranty. The e-mail reads in its entirety, "Mark, Please see the enclosed. Melodie Craft."

- October 12 e-mail from Craft to Ticer, attaching a settlement agreement. The e-mail states in its entirety, "Please have the enclosed executed and then return to me." The attached settlement agreement was not signed by Jones or on behalf of DDC.

- October 19, 2009, letter from Ticer to Craft, returning the settlement agreement signed by Weilbacher, and requesting that Craft provide "a conformed copy once executed by your clients." Paragraph 2.3 of the settlement agreement signed by

Weilbacher provided Jones's personal guarantee of the entire gross settlement amount.

In her motion for summary judgment, Craft contended there was no misrepresentation of a material fact, no reasonable reliance, and no damages. She argued that an attorney's statements communicating her client's negotiating position are not statements of material fact. She also contended that a third party's reliance on an attorney's representation is not justified when the representation is made in an adversarial context. And she argued that Weilbacher could not recover benefit of the bargain damages from her. In response, Weilbacher contended, among other arguments, that a settlement existed and "Craft's communications do more than suggest negotiation; they direct and at worst, reasonably infer a settlement exists between Jones, DDC, and Weilbacher." In reply, Craft also contended that any reliance by Weilbacher was not reasonable because the alleged settlement agreement was not signed and was not enforceable under Rule 11 of the Texas Rules of Civil Procedure. The trial court granted Craft's motion without stating the grounds.

We conclude that Weilbacher did not raise a genuine issue of material fact on the justifiable reliance element of his fraud claim against Craft. In *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999), the court held that a nonclient could bring a claim against an attorney for negligent misrepresentation.[3] The court explained, however, that the nonclient must prove justifiable reliance on a misrepresentation of material fact. *Id.* at 794. "Thus, not every statement made by an attorney to a nonclient is actionable . . . . For example, an attorney's statements communicating her client's negotiating position are not statements of material fact." *Id.* "[C]ourts have generally acknowledged that a

---

[3] Although *McCamish* is a negligent misrepresentation case, and Weilbacher on appeal asserts only a fraud claim, both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance. *Grant Thorton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). *McCamish*'s discussion of reliance is therefore applicable here.

third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context." *Blankinship v. Brown*, 399 S.W.3d 303, 309 (Tex. App.—Dallas 2013, pet. denied); *see also Chu v. Hong*, 249 S.W.3d 441, 446 n.19 (Tex. 2008) (stating the court in *McCamish* noted that "fraud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable").

Weilbacher contends Craft misrepresented she had authority to enter into a settlement agreement and that a settlement had been reached. He contends that the statements went beyond "communicating her client's negotiating position" to a misrepresentation that settlement had actually been reached. Assuming these statements were made, reliance on them was not reasonable as a matter of law. The parties remained in an adversarial relationship. The agreement Craft sent to Ticer was not signed by her clients, and Craft made no express representation that her clients had approved or would sign it. In *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 635–36 (Tex. App.—Houston [14th Dist.] 2010, no pet.), the court affirmed a summary judgment on a misrepresentation claim against opposing counsel arising out of pre-suit settlement negotiations. The court concluded there was no reliance as a matter of law:

> [T]he evidence does not suggest anything other than an adversarial relationship between the parties at the time the alleged misrepresentation took place. When the Settlement Agreement was prepared, the parties were in the midst of negotiations to prevent the onset of litigation between them. Courts have repeatedly held a party may not justifiably rely on statements made by opposing counsel during settlement negotiations. . . . Here, the negotiation process involved an arms-length transaction in which both sides were represented and advised by their own counsel.

*Valls*, 314 S.W.3d at 635–36 (citations omitted); *see also Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (generally, reliance on representations made in business or commercial transaction not justified when representation takes place in adversarial context such as litigation). There is no evidence that the parties here had anything other than an

adversarial relationship throughout the course of the litigation between Weilbacher, Jones, and DDC.

Weilbacher argues it was reasonable to rely on Craft's statements because of the presumption that attorneys have authority to act on behalf of their clients. The cases on which he relies, however, are consistent with both *McCamish* and *Valls*. In *Breceda v. Whi*, 187 S.W.3d 148, 152–53 (Tex. App.—El Paso 2006, no pet.), the court concluded that a Rule 11 settlement agreement was enforceable when it was signed by a party's attorney rather than the party himself; the evidence did not rebut the presumption that the attorney's actions were at the direction of his client. And in *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 301 (Tex. App.—Austin 2000, pet. denied), the court concluded there was a fact question whether the attorneys for an executrix of an estate had actual authority to bind the executrix to a settlement agreement she had not signed. The executrix's attorneys had announced in open court that a settlement had been reached, and her co-parties, members of her family represented by the same attorneys, had signed the written agreement. *See id.* at 295–96. These cases, however, address the enforceability of the settlement agreement itself where the agreement in question had been signed or announced in open court by the attorney but not signed by the client. *See Breceda*, 187 S.W.3d at 152–53; *Ebner*, 27 S.W.3d at 301. They do not address the viability of a fraud claim against the attorney by a nonclient for statements allegedly made prior to the execution of an agreement.

Weilbacher also cites *JJJJ Walker, LLC v. Yollick*, No. 14-13-01610-CV, 2014 WL 4933040, at *8–9 (Tex. App.—Houston [14th Dist.] Sept. 25, 2014, no pet. h.), in which the court concluded there was legally sufficient evidence to support a jury's finding of fraud by an attorney (including the element of reliance), so that the trial court should not have granted the attorney's motion for judgment notwithstanding the verdict. *Yollick* does not hold, however, that

the element of reliance always presents a fact issue for a jury. The same court held in *Valls* that summary judgment was proper, expressly rejecting the argument that justifiable reliance was always a question of fact. *See Valls*, 314 S.W.3d at 635–36 ("Moreover, this Court has repeatedly decided issues of justifiable reliance as a matter of law. . . . Therefore, we disagree with the suggestion that a fact-finder must always decide whether a party's reliance on a misrepresentation was justified."); *see also Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 443 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (affirming summary judgment because party was not justified in relying on opposing counsel's representations given the adversarial nature of the parties' relationship).

The court in *Yollick* distinguished *Chapman Children's Trust* in the context of Yollick's affirmative defense of attorney immunity.[4] *Yollick*, 2014 WL 4933040 at *14 and n.10. The court stated:

> Yollick relies on language . . . [in case law] in explaining that a non-client cannot reasonably rely on statements made by opposing counsel in an adversarial context. But in signing the Letter Agreement, Yollick was not relying on his professional knowledge and training as an attorney to make a statement in the course of representing his client in an adversarial context; he was simply signing his name, acting as the Bank's agent with actual authority to bind his principal to a promise of future performance. The problem is that he knew the promise was false.

*Id.* (footnote omitted). Weilbacher contends that as in *Yollick*, Craft was acting as an agent with actual authority to settle the case on behalf of Jones and DDC when sending the e-mails and draft settlement agreements to Ticer, even though she had no such authority.

In cases such as *Yollick* involving the attorney immunity defense, courts focus on the type or kind of conduct in which the attorney is engaged to determine whether the conduct is

---

[4] *Yollick* is thus in a slightly different posture; here, Craft sought summary judgment on Weilbacher's fraud claim rather than on an affirmative defense of attorney immunity.

actionable or merely undertaken in the representation of the client. *See Chapman Children's Trust*, 32 S.W.3d at 440. In *Yollick*, Yollick was the bank's outside counsel. He signed a letter agreement on a bank's behalf documenting a "complicated arrangement" under which the bank would loan money to appellants, the purchasers of a bankrupt hospital system. *Yollick*, 2014 WL 4933040 at *2. No litigation was pending at the time. On the same day Yollick signed the letter agreement, he participated in plans to violate the agreements. *See id*. at *7. As a result of those plans, appellants' interest in the hospitals was divested, and they received nothing when the hospitals were later sold. *See id.* at *3. Appellants then sued.

In contrast, the only action taken here by Craft was the exchange of e-mails and draft settlement agreements in the course of attempting to settle pending litigation on behalf of her clients. Similar actions were taken by the attorneys in *Chapman Children's Trust*, who "attempted to negotiate a smaller settlement with the Trusts on their clients' behalf." *Chapman Children's Trust*, 32 S.W.3d at 442. The court contrasted these actions with those of the attorney in *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ), in which there were allegations that the attorney was assisting his client in perpetrating a fraudulent business scheme. *See Chapman Children's Trust*, 32 S.W.3d at 442. The court explained, "[t]he conduct complained of here, unlike the role played by the lawyer in *Likover*, involves acts or omissions undertaken as part of the discharge of [the law firm's] duties as counsel to an opposing party." *Id.* The court concluded, "[b]ecause under Texas law it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable, the trial court's decision to grant summary judgment on the Trusts' fraud and conspiracy claims against [the law firm] was proper." *Id.* Similarly, the attorney's conduct in *Yollick* contrasts with Craft's actions in settlement negotiations with Ticer. *Yollick* does not compel a holding that a fact issue exists on justifiable reliance in this case.

Because there is no genuine issue of material fact that Weilbacher justifiably relied on any misrepresentation by Craft, summary judgment was proper on Weilbacher's fraud claim. *See Ernst & Young, L.L.P.*, 51 S.W.3d at 577 (elements of fraud); *Espalin*, 27 S.W.3d at 682–83 (summary judgment standards). We overrule Weilbacher's second issue.

### 2. Severance

Rule 41, Texas Rules of Civil Procedure, provides that "[a]ny claim against any party may be severed and proceeded with separately." *See* TEX. R. CIV. P. 41. This rule "grants the trial court broad discretion in the matter of severance," and the trial court's ruling will not be reversed unless it has abused its discretion. *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. "A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues." *Id.* In his first issue, Weilbacher asserts that these requirements were not met.

Weilbacher argues that severance was improper for several reasons. First, he argues that severing a single cause of action, fraud relating to the settlement agreement, was an abuse of discretion. Second, Weilbacher argues that his injury, the amount of money he should have received from the settlement agreement, is indivisible. He asserts that if he prevails in his cause of action against Jones, he would not be entitled to any recovery against Craft, and his claims against her would be moot. Third, Weilbacher contends that claims made in the alternative should not be severed. He argues that he would recover either "on the settlement agreement or under the benefit of the bargain." Last, Weilbacher argues that his cause of action depends on Craft's "capacity to act," specifically, her authority to act on behalf of Jones to enter into the settlement agreement.

Craft responds that a trial court does not abuse its discretion when it severs the claims against one of several defendants after granting summary judgment in favor of that defendant. When the trial court granted the severance, Craft argues, summary judgment had been granted in her favor so that there were no claims pending against her. Craft also argues that severance was proper because Weilbacher's claims against her could have been brought properly as the subject of a separate lawsuit.

Both parties cite our opinion in *Levetz v. Sutton*, 404 S.W.3d 798, 802 (Tex. App.— Dallas 2013, pet. denied). The parties in *Levetz* were a brother and sister who had entered into a written settlement agreement to resolve a dispute regarding their father's estate. *Id.* at 800–01. The sister later claimed she lacked capacity at the time she signed the agreement; the brother responded that she had breached the agreement. *Id.* at 801. The trial court ruled on the capacity claim, but severed the breach of contract claim and transferred it to the county in which the father's estate was pending. *Id.* We concluded the severance was error, because the capacity to agree to the contract and the breach of the contract "are so interwoven that they involve the same facts and issues." *Id.* at 803. The brother's claim for breach would require proof of a valid contract. The sister's claim that she lacked mental capacity to assent was a defense to the formation of the contract. Therefore, the trial court's severance separated interwoven issues that should be tried together. *Id.*

In contrast, Weilbacher's fraud claim against Craft is a separate cause of action from his claims against Jones. As we have discussed, summary judgment on Weilbacher's fraud claim against Craft was proper. Unlike *Levetz*, in which the single cause of action for breach of contract between one plaintiff and one defendant had not been resolved and remained pending at the time of the severance, Weilbacher's fraud claim against Craft has been resolved in its entirety. *See id.* The issue resolved by summary judgment, an opposing counsel's liability for

fraud to a nonclient, is not presented in Weilbacher's claims against Jones. Where a plaintiff's suits against each defendant "are each a cause of action which might properly be tried and determined as if it were the only claim in controversy," the "basic requirement for severance" is met. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733–34 (Tex. 1984).

We have concluded severance is proper in similar circumstances. In *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex. App.—Dallas 2002, pet. denied), we explained that "[i]f summary judgment in favor of one defendant is proper in a case with multiple defendants, severance of that claim is proper so it can be appealed." The trial court in *Arredondo* severed the plaintiffs' claims "from those of the remaining 808 firefighters who brought identical claims against the City." *Id.* at 659. We concluded that although the trial court was not required to sever an interlocutory summary judgment, it had broad discretion in determining whether severance should be granted. *Id.* (citing *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 812 (Tex. App.—Austin 1997, no writ) ("Where summary judgment in favor of a single defendant is proper in a case with multiple defendants, severance of that claim is also proper so that it may be appealed.")).

Weilbacher distinguishes *Arredondo*, arguing that it does not address or negate the well-settled principle that a single cause of action cannot be severed. He argues that the question of capacity—Craft's authority to act for Jones—is a single, indivisible issue from which his single, indivisible claim for fraud arises. Weilbacher's claim against Craft, however, was a separate cause of action which could have been separately asserted. Even if Weilbacher's fraud claim against Jones depends in part on proof of Craft's actions, it does not follow that Craft must remain in the suit as a party when the court has determined that she has no liability to Weilbacher for those actions as a matter of law. Weilbacher's claim against Craft was properly severable

–14–

under the standards set forth in *Guaranty Federal Savings Bank* and Rule 41. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 658; TEX. R. CIV. P. 41.  We overrule Weilbacher's first issue.

<center>**CONCLUSION**</center>

Summary judgment for Craft was proper, and the trial court did not err by granting Craft's motion for severance.  We affirm the trial court's judgment.

<div style="margin-left:40%;">
/Michael J. O'Neill/
_____
MICHAEL J. O'NEILL
JUSTICE
</div>

131252F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

NATHAN WEILBACHER, Appellant

No. 05-13-01252-CV      V.

MELODIE CRAFT, Appellee

On Appeal from the 191st Judicial District Court, Dallas County, Texas
Trial Court Cause No. 13-06130-J.
Opinion delivered by Justice O'Neill, Justices Lang-Miers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Melodie Craft recover her costs of this appeal from appellant Nathan Weilbacher.

Judgment entered this 19th day of November, 2014.