**REVERSE and REMAND and Opinion Filed November 3, 2022**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00871-CV**

**CAROL M. KAM, Appellant**

**V.**

**CARL DAVID ADAMS, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-05795**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Goldstein
Opinion by Justice Reichek

Carol M. Kam, representing herself pro se, appeals the trial court's summary judgment granting a declaratory judgment in favor of Carl David Adams. Because we conclude Adams failed to show his entitlement to summary judgment as a matter of law, we reverse the trial court's judgment and remand the cause for further proceedings.

## Background

At the center of this action is an "Attorney's Retainer Agreement" pursuant to which Adams was to represent Kam in two pending civil cases. Adams moved for

a traditional summary judgment seeking a declaration that the retainer agreement was valid and enforceable. As supporting evidence, Adams submitted his affidavit, a copy of the retainer agreement, and copies of emails he exchanged with Kam's older brother, Thomas.

In his affidavit, Adams testified he was contacted by Kam and Thomas about representing Kam in two suits in which she had been representing herself pro se with Thomas's assistance. In their discussions, Thomas made it clear to Adams that he was acting as Kam's agent, legal consultant, and financial advisor and, as such, he was negotiating for Adams's services on Kam's behalf. Thomas insisted it was "absolutely necessary" for him to continue to provide consultation and advice to Kam on matters pertaining to the litigation.

Based on his negotiations with Thomas, Adams drafted a proposed retainer agreement that defined the term "Client" to include both Thomas and Kam. The agreement further stated that Thomas was authorized to act on Kam's behalf "to the full extent necessary and convenient to facilitate the rendering of legal services by [Adams]." Paragraph two of the agreement required Thomas and Kam to pay an initial $10,000 "non-refundable legal fee" and to maintain an "ever-green retainer" of not less than $5,000. Adams stated he forwarded the proposed agreement to Kam and Thomas on February 5, 2021.

Adams met with Kam in his office on February 8. Thomas was not present at this meeting. Kam signed the retainer agreement and gave Adams a check for

$10,000. Kam subsequently claimed that Adams orally agreed to hold the check until Thomas signed the agreement. Adams stated Kam never requested he hold the check and he did not agree to do so.

On February 10, Adams emailed the retainer agreement to Thomas stating,

> Attached (in PDF format) is the modified <u>Attorney's Retainer Agreement</u> containing your suggested changes with regard to the amount of the Non-Refundable Legal Fee called for in ¶ 2, as well as the signatures of Carol Kam and myself, and dated February 8, 2021. Please sign the <u>Agreement</u> at the place provided for your signature on Page 5 and return a fully executed copy of the <u>Agreement</u> to my office ASAP.

Thomas replied thirty minutes later,

> We have a failure to communicate which is troubling. We have a great case. You are a great attorney. You are authorized to proceed. There will be no non-refundable retainer. Please start the Case and we will pay you on the hourly basis. . . . The proposal also needs to list clearly the goals for the case. . . . I will be around most of the day.

This was followed by another email from Thomas later that evening:

> I will call you in the morning. We are not yet on the same page. Carol and I have discussed and we have decided on a more direct route for you.

Early in the morning of February 11, a severe cold front with inclement weather hit north Texas. Adams testified that, due to the weather, he decided not to travel to his office on Thursday, February 11 or Friday, February 12. Beginning on Monday, February 15, Adams was no longer able to send or receive emails from his home computer. Adams's office building closed all operations on February 16.

During this time, Adams states he had no communications with either Thomas or Kam.

Despite not being able to access his office and files, Adams stated he immediately began working intensely on Kam's cases in preparation for a hearing scheduled to occur on February 18. Adams testified that, during their discussions leading up to the retainer agreement, Thomas was adamant Adams be fully prepared for the hearing and, given the lengthy history of the litigation prior to his involvement, he stated it took significant effort for him to get "up to speed" and prepare an analysis.

On the afternoon of February 16, Adams spoke with Kam. According to Adams, Kam immediately stated that Adams's lack of response to her telephone calls (which he states he never received), or to her emails (which he states he received only days later), had caused her to decide to discontinue using his services. Adams stated he provided Kam with a detailed invoice for the work he performed. In addition to the invoice, Adams testified he sent Kam a detailed explanation of his lack of availability during the storm and encouraged her to reconsider her decision to terminate his employment. In response, Kam accused Adams of dishonesty and thievery and demanded Adams disgorge the $10,000 fee he had deposited. Kam told Adams there was no valid agreement between them because Thomas never signed it.

In anticipation of claims being filed against him, Adams filed this declaratory judgment action.[1]  Adams's motion for summary judgment summarized the evidence discussed above and argued simply,

> Plaintiff Adams seeks Declaratory Judgment Relief from this Court, declaring the unambiguous terms of and validity of the Contract, and seeks the enforcement of all of the terms of the Contract, including the Non-Refundable Legal Fee obligations of [Kam] under the undisputed circumstances presented by the Motion for Summary Judgment.

In the alternative, Adams requested quantum meruit relief, also based solely on the "undisputed circumstances presented."  Kam did not file a written response to the motion.

Following a hearing, the trial court signed a judgment declaring that (1) the retainer agreement was valid and enforceable, (2) the $10,000 legal fee was non-refundable, and (3) Kam's demands for the return of the $10,000 fee constituted a repudiation of the agreement.  Kam brought this appeal.

**Analysis**

As her primary argument on appeal, Kam challenges the trial court's judgment on the basis that the retainer agreement was not binding or enforceable without her brother's signature.  To prevail on summary judgment, Adams was required to establish that no material fact issues existed, and conclusively prove all elements of his cause of action as a matter of law.  *Ziemian v. TX Arlington Oaks Apartments,*

---

[1] Kam asserted counterclaims under the Texas Deceptive Trade Practices Act, but later withdrew those claims.

*Ltd.*, 233 S.W.3d 548, 554 (Tex. App.—Dallas 2007, no pet.). We review a summary judgment de novo to determine whether this burden has been met. *Id.* In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true, every reasonable inference is indulged in the nonmovant's favor, and any doubts are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We review the summary judgment record for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Ziemian*, 233 S.W.3d at 554.

A motion for traditional summary judgment must expressly present the specific grounds upon which it is made. TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993). "In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence." *McConnell*, 858 S.W.2d at 341. The nonmovant has no burden to respond to a motion for traditional summary judgment unless the movant establishes its right to judgment on the issues expressly presented to the trial court. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). The trial court may not grant summary judgment by default when the movant's motion is legally insufficient. *Id.*

In this case, Adams's motion for summary judgment merely summarizes his proffered evidence and then requests, based solely on "the undisputed circumstances," a declaratory judgment that the retainer agreement was valid and

–6–

enforceable. The motion cites no authority and does not discuss the elements required for the formation of a valid contract. Nor does the motion explain how the evidence submitted establishes any of the required elements. As such, we conclude the motion failed to expressly present a specific ground for summary judgment. *McConnell*, 858 S.W.2d at 341.

Furthermore, Adams's motion failed to establish the absence of a material fact issue. The elements required for the formation of a valid contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied). Whether or not the parties intended to enter into a final, binding, and enforceable contract is frequently a question of fact. *Foreca, S.A. v. GRD Dev. Co., Inc.*, 758 S.W.2d 744, 745 (Tex. 1988). Intent is a fact question uniquely within the realm of the trier of fact because it depends upon the credibility of the witnesses and the weight to be given to their testimony. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). If the parties intended that their contract would not be binding until it was signed by the parties, then the signatures of the parties are required for the contract to be effective. *Rea v. Simmons & Simmons Constr. Co.*, 275 S.W.2d 747, 750 (Tex. App.—San Antonio), *aff'd*, 286 S.W.2d 353 (Tex. 1955).

Adams's own summary judgment evidence demonstrates there is a fact issue regarding whether the retainer agreement would be binding without Thomas's signature. The evidence shows that Thomas controlled most aspects of the litigation involving his sister and he was the primary, if not sole party involved in negotiating the terms of the retainer agreement with Adams. Thomas's level of control was such that both Thomas and Adams felt it necessary to make Thomas a party to the agreement with the term "Client" defined as being both Thomas and Kam, jointly. The agreement included distinct signature lines for both Kam and Thomas.

The evidence further shows Kam believed Adams would not deposit the check she gave him until after Thomas signed the retainer agreement. Although Adams disputes that this was their understanding, he is an interested witness. For the testimony of an interested witness to establish a fact as a matter of law, there must be no circumstances in evidence tending to discredit his testimony. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). Such circumstances are presented here by Kam's complete reliance on Thomas in the creation and negotiation of the retainer agreement, as well as the continued negotiations and apparent changes made to the agreement, including to the non-refundable fee specifically, after Kam signed it.

Although Adams performed work on Kam's cases, there is no evidence Kam was aware of Adams's performance or that she accepted the benefits of it. *See Rea*, 275 S.W.2d at 750. Furthermore, most of the work Adams performed appears to

have been done after Thomas informed him they would not pay him the non-refundable fee that is in dispute.

Reading the evidence in the light most favorable to Kam, as we must, Adams's summary judgment evidence does not conclusively establish Kam intended to enter a binding contract with Adams absent Thomas's signature on the agreement. Because Adams's evidence serves only to raise a fact issue, Kam was not required to offer a response to the motion for summary judgment or contradictory proof. *See Swilley*, 488 S.W.2d at 67. "In our summary judgment practice, the opponent's silence never improves the quality of a movant's evidence." *Id*.

Based on the foregoing, we conclude Adams failed to establish his entitlement to a declaratory judgment on the enforceability of the retainer agreement as a matter of law. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

210871F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CAROL M. KAM, Appellant

No. 05-21-00871-CV      V.

CARL DAVID ADAM, Appellee

On Appeal from the 68th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-21-05795. Opinion delivered by Justice Reichek. Justices Schenck and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant CAROL M. KAM recover her costs of this appeal from appellee CARL DAVID ADAM.

Judgment entered November 3, 2022