JOHN M. BAILEY, JUSTICE
*340 This interlocutory appeal involves a claim of governmental immunity in an insurance dispute. The Texas Municipal League Intergovernmental Risk Pool challenges the trial court's denial of its plea to the jurisdiction. In its sole issue, the Risk Pool, a governmental entity protected by governmental immunity, asserts that the trial court erred by denying its plea to the jurisdiction because its insured, the City of Abilene, failed to plead a valid waiver of immunity under Section 271.152 of the Texas Local Government Code. See TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2016). We affirm.
Background Facts
The underlying lawsuit arises from an insurance claim for hail damage. The Risk Pool is a self-insurance pool of local governments. See TEX. GOV'T CODE ANN § 2259.031(a) (West 2016). As such, the Risk Pool is a governmental entity that enjoys governmental immunity the same as other political subdivisions. See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund , 212 S.W.3d 320, 324-26 (Tex. 2006). The City is a member of the Risk Pool.
The City purchased real and personal property insurance to cover over 400 structures located in Abilene. On June 12, 2014, a wind and hailstorm moved through Abilene causing extensive property damage. The following day, the City reported the damage to the Risk Pool, and the Risk Pool promptly sent an adjuster to evaluate the claim.
On August 20, 2014, the City executed the original Proof of Loss in accordance with the time limits set forth in the Property Coverage Document.[2] Based on the loss and damage known at the time, the City's initial claim amounted to $1,799,101.51, which the Risk Pool calculated using its own valuation of the property at the time of the loss less the deductible. The Risk Pool promptly paid that amount.
The parties continued to assess the damage over the course of two years, and the Risk Pool's adjuster submitted supplemental reports regarding damage that was not included in the original estimate. The parties do not dispute that the Risk Pool made supplemental payments to the City in April 2015, February 2016, and March 2016. Furthermore, it is undisputed that as of June 2016 the Risk Pool had paid the City a total of $6,948,132.78 for damages caused by the 2014 storm.
On June 13, 2016, the City submitted an additional Proof of Loss for a significantly higher amount than it had previously reported. In the subsequent Proof of Loss, the City claimed that its damages less the deductible and prior payments amounted to $19,960,422.44. The City subsequently requested a 180-day extension to invoke the appraisal provision in the Property Coverage Document. The Risk Pool granted the City an extension on August 15, 2016.
On August 26, 2016, the City demanded an appraisal of the damage pursuant to the procedures set out in the Property Coverage *341 Document.[3] The Risk Pool declined to participate in an appraisal because discussions were still ongoing between the parties. Accordingly, the Risk Pool asserted that an appraisal was not warranted because there was a lack of a disagreement regarding the "amount of the loss."
Following multiple failed attempts to resolve the dispute without court intervention, the City filed the underlying lawsuit asserting a claim for breach of contract against the Risk Pool. The City alleged that the Risk Pool failed to properly investigate and evaluate the damage caused by the storm.
The City subsequently filed an amended petition that expanded upon its original allegations. In the amended petition, the City sought damages exclusively under Section 271.153 of the Texas Local Government Code for its cause of action for breach of contract. Additionally, the City sought to compel the Risk Pool to participate in the appraisal process in accordance with the Property Coverage Document to determine the amount of the City's damages.
Subsequently, the City filed a verified motion to compel appraisal and abate the case pending completion of the appraisal. The Risk Pool objected to the City's motion on the basis that the Risk Pool's governmental immunity deprived the trial court of subject-matter jurisdiction to order an appraisal. The Risk Pool also argued that, even if the trial court had jurisdiction, the City failed to comply with the contractual conditions precedent to invoke the appraisal right.
The Risk Pool also filed an amended partial plea to the jurisdiction in response to the City's amended petition. In the amended partial plea, the Risk Pool asserted that Section 271.152 of the Texas Local Government Code did not waive immunity for a claim for specific performance. The Risk Pool also challenged the sufficiency of the City's jurisdictional pleadings. The Risk Pool also reasserted its previous arguments regarding the City's other claims for damages.
On July 28, 2017, the trial court held a hearing on both the Risk Pool's amended partial plea to the jurisdiction and the City's motion to compel appraisal and abate the case. Following the hearing, the trial court entered a written order that denied the Risk Pool's amended partial plea to the jurisdiction and granted the City's motion to compel appraisal and abate the case. This appeal followed.
Analysis
In a single issue, the Risk Pool challenges the trial court's denial of its amended partial plea to the jurisdiction regarding the request to compel appraisal.
*342 [4] The Risk Pool contends that the City's pleadings did not adequately assert a waiver of the Risk Pool's governmental immunity under the Texas Local Government Contract Claims Act (the Act) and that the City failed to adequately plead jurisdictional facts. See LOC. GOV'T §§ 271.151-.160. The Risk Pool bases these contentions on the argument that the City's attempt to invoke the appraisal process constitutes an impermissible attempt to obtain specific performance under the contract, a remedy for which the Risk Pool's governmental immunity would not be waived. See LOC. GOV'T §§ 271.151(2)(B), 271.153(c).[5] We disagree.
"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." Mission Consol. Indep. Sch. Dist. v. Garcia , 253 S.W.3d 653, 655 (Tex. 2008). The State retains sovereign immunity from suit to the extent that immunity has not been abrogated by the legislature. See Tex. Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 853 (Tex. 2002). Governmental immunity operates like sovereign immunity to afford similar protection to political subdivisions of the State, including counties, cities, and school districts. Harris Cty. v. Sykes , 136 S.W.3d 635, 638 (Tex. 2004) (citing Wichita Falls State Hosp. v. Taylor , 106 S.W.3d 692, 694 n.3 (Tex. 2003) ).
Governmental immunity encompasses both immunity from suit and immunity from liability. Reata Constr. Corp. v. City of Dallas , 197 S.W.3d 371, 374 (Tex. 2006) ; Tooke v. City of Mexia , 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit completely bars actions against governmental entities unless the legislature expressly consents to suit. Id. Immunity from suit deprives the courts of subject-matter jurisdiction and thus completely bars the plaintiff's claims. Wichita Falls State Hosp. , 106 S.W.3d at 696. Because sovereign/governmental immunity from suit defeats a trial court's subject-matter jurisdiction, it is properly asserted in a plea to the jurisdiction. Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject-matter jurisdiction is a legal question that we review de novo. Id. at 226 ; Ector Cty. v. Breedlove , 168 S.W.3d 864, 865 (Tex. App.-Eastland 2004, no pet.).
A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding his allegation of jurisdictional facts or (2) an evidentiary challenge to the existence of jurisdictional facts. Miranda , 133 S.W.3d at 226-27. The Risk Pool is challenging the City's pleadings. In a pleadings challenge, the plaintiff bears the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. Id. at 226. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate *343 the court's jurisdiction to hear the cause." Id. We must accept as true all factual allegations in the petition, construe the pleadings liberally, and look to the pleader's intent. Id. at 226-27.
The City alleged that the Risk Pool's governmental immunity is waived for the City's claim for breach of contract under the Act. See LOC. GOV'T §§ 271.151-.160. "[This] Act waives immunity from contract suits for local governmental entities...." Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty. , 449 S.W.3d 98, 106 (Tex. 2014). There is no dispute among the parties that the Act generally waives the Risk Pool's governmental immunity for the City's cause of action for breach of the insurance contract. Section 271.152 of the Act states:
A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.
LOC. GOV'T § 271.152.
The dispute in this appeal focuses on whether the Act waives the Risk Pool's governmental immunity for the City's request for the trial court's enforcement of the appraisal provision. The Risk Pool asserts that the City's request is a remedy that is not permitted under the Act. Specifically, the Risk Pool asserts that the City's request constitutes a claim for specific performance that is not authorized by Section 271.153. As noted previously, Section 271.153 only permits the remedy of specific performance in a very narrow category of public contracts concerning the sale or delivery of reclaimed water. See LOC. GOV'T §§ 271.153(c), 271.151(2)(B). Conversely, the City contends that the appraisal provision is a contractual adjudication procedure that is enforceable under Section 271.154 of the Act. See LOC. GOV'T § 271.154.
In Zachry , the Texas Supreme Court examined the interplay between Section 271.152 and the other provisions of the Act. The court clarified that the subsequent provisions of the Act set out the "terms and conditions" of the Act. Zachry Constr. Corp. , 449 S.W.3d at 106. The court concluded that Sections 271.153 and 271.154"relate to the litigation and adjudication of a claim." Id. at 107-08. Section 271.153 sets out "recovery limits," while " Section 271.154 provides for enforcement of contractual adjudication procedures." Id. at 107.
In Zachary , the court was primarily concerned with the recovery limits set out in Section 271.153. The court determined that the Act's waiver of immunity does not "allow [a] recovery beyond that permitted by Section 271.153." Id. at 108.[6] Accordingly, we first look to see if the City's request for judicial enforcement of the appraisal provision is a recovery that is not permitted by Section 271.153. The Risk Pool asserts that the City's request is a claim for specific performance, and as such, it is a recovery that is not permitted by Section 271.153. We disagree that the City's request for enforcement of the appraisal provision is a claim for specific performance.
Statutory interpretation is a question of law that we review de novo. Sw. Royalties, Inc. v. Hegar , 500 S.W.3d 400, 404 (Tex. 2016). Our fundamental goal when reading a statute "is to ascertain and *344 give effect to the Legislature's intent." Tex. Mut. Ins. Co. v. Ruttiger , 381 S.W.3d 430, 452 (Tex. 2012). To do this, we look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied or is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results. Crosstex Energy Servs., L.P. v. Pro Plus, Inc. , 430 S.W.3d 384, 389-90 (Tex. 2014).
The Act does not define "specific performance." Undefined terms in a statute are typically given their ordinary meaning unless a different or more precise definition is apparent from the term's use in the context of the statute. TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011). We recently addressed the remedy of specific performance in Hogan v. Goldsmith , 533 S.W.3d 921 (Tex. App.-Eastland 2017, no pet.). We noted that "[s]pecific performance is the remedy of requiring exact performance of a contract in the specific form in which it was made." Id. at 923 (quoting Levetz v. Sutton , 404 S.W.3d 798, 805 (Tex. App.-Dallas 2013, pet. denied) ). It is an equitable remedy that the trial court may award upon a showing of breach of contract. Id. (citing Stafford v. S. Vanity Magazine, Inc. , 231 S.W.3d 530, 535 (Tex. App.-Dallas 2007, pet. denied) ). Specific performance is not a separate cause of action but rather a substitute for inadequate monetary damages. Tamuno Ifiesimama v. Haile , 522 S.W.3d 675, 685 (Tex. App.-Houston [1st Dist.] 2017, pet. denied).
The San Antonio Court of Appeals's recent opinion in City of San Antonio v. Hays Street Bridge Restoration Group is an example of a claim seeking specific performance. No. 04-14-00886-CV, 2017 WL 776112 (Tex. App.-San Antonio Mar. 1, 2017, pet. filed) (mem. op.). In that case, the City of San Antonio and a historical restoration group discussed working together to restore a historical bridge and to develop a certain piece of property into a park. Id. at *1. After receiving the property as a donation, the city sold the property to a beer company for commercial use. Id. at *2. The restoration group filed suit asserting a breach of contract claim that sought specific performance as its exclusive remedy in the form of compelling the city to develop the park. Id. The court held that the relief of specific performance in the form of requiring the city to fulfill its contractual obligations was not permitted under Section 271.153 's limitations. Id. at *5.
We conclude that the City's request to invoke the appraisal provision does not constitute a request for the equitable remedy of specific performance. In the context of an insurance contract, appraisal is not sought in equity as a substitute for inadequate monetary damages, but rather it is a procedural vehicle provided by the contract to determine the amount of loss. See Haile , 522 S.W.3d at 685. As noted by the Texas Supreme Court, "[a]ppraisal clauses, a common component of insurance contracts, spell out how parties will resolve disputes concerning a property's value or the amount of a covered loss." In re Universal Underwriters of Tex. Ins. Co. , 345 S.W.3d 404, 405 (Tex. 2011). They provide a means to resolve disputes about the amount of loss for a covered claim. Id. at 406-07 (citing State Farm Lloyds v. Johnson , 290 S.W.3d 886, 888 (Tex. 2009) ). "Appraisals can provide a less expensive, more efficient alternative to litigation...." Id. at 407 (citing Johnson , 290 S.W.3d at 895 ). The effect of a completed appraisal estops "one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." Garcia v. Lloyds , 514 S.W.3d 257, 264 (Tex. App.-San Antonio 2016, pet. denied)
*345 .
In this case, the City sought to compel appraisal under the Property Coverage Document in order to determine the "amount of the loss" the storm caused. The appraisal provision in the Property Coverage Document is consistent with the typical appraisal provision found in insurance policies. Section 271.154 is entitled "Contractual Adjudication Procedures Enforceable." LOC. GOV'T § 271.154. Section 271.154 provides as follows:
Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.
Within the insurance context, appraisal constitutes an alternative dispute resolution procedure because it settles a dispute regarding the amount of damages by means other than litigation, often before suit is filed. Appraisal is a contractual provision that "binds the parties to have the extent or amount of the loss determined in a particular way." Johnson , 290 S.W.3d at 895 (quoting In re Allstate Cty. Mut. Ins. Co. , 85 S.W.3d 193, 195 (Tex. 2002) ). Furthermore, appraisal may provide a "less expensive, more efficient alternative to litigation." Universal Underwriters , 345 S.W.3d at 407 ; see also Nat'l Sec. Fire & Cas. Co. v. Hurst , 523 S.W.3d 840, 844 (Tex. App.-Houston [14th Dist.] 2017, pet. filed) ("From a policy point of view, appraisal clauses allow the insured and insurer to resolve disputes about damages with greater efficiency by eliminating the cost and delay of traditional litigation."). Accordingly, we conclude that the appraisal provision at issue in this appeal constitutes an adjudication procedure under Section 271.154.
Under its express terms, Section 271.154 provides that adjudication procedures are enforceable under the Act unless they conflict with another provision.[7] However, the Risk Pool asserts that Section 271.154 does not waive its governmental immunity for an adjudication proceeding permitted by the provision. The Risk Pool bases this contention on a statement from Zachry that the other sections in the Act constitute "limitations on the waiver of immunity" contained in Section 271.152. 449 S.W.3d at 108. Under this interpretation, the Risk Pool contends that Section 271.154 can only be used defensively by a governmental defendant to assert contractual procedural rights.
We disagree that the court in Zachry considered Section 271.154 to be a limitation on the Act's waiver of immunity. The court characterized Section 271.154 as a "preservation of procedures" that "provides for enforcement of contractual adjudication procedures." Id. at 107-08. ("But Section 271.152, as qualified by this 'subject to' phrase also does not preclude other defenses or other contractual procedures ...." (emphasis added) ); see Romulus Grp., Inc. v. City of Dallas , No. 05-16-00088-CV, 2017 WL 1684631, at *6 (Tex. App.-Dallas May 2, 2017, pet. filed) (mem. op.) (noting that Zachary 's use of "other contractual procedures" is a reference to Section 271.154 ). Zachary 's characterization of Section 271.154 as a "preservation" statute indicates that the *346 contractual enforcement adjudication procedures remain enforceable under the Act. Furthermore, there is nothing in the language of Section 271.154 indicating that it can only be invoked by a governmental defendant. The statute simply provides that contractual adjudication procedures are enforceable without reference to which party may seek to enforce them.
The trial court did not err in denying the Risk Pool's amended partial plea to the jurisdiction with respect to the City's request to enforce the appraisal provision. Accordingly, we overrule the Risk Pool's sole issue on appeal.
This Court's Ruling
We affirm the order of the trial court denying the Risk Pool's amended partial plea to the jurisdiction.

Section IV.D. of the General Conditions in the Property Coverage Document states:
It shall be necessary for the Member to render a signed and sworn proof of loss to the Fund or its appointed representative, within 60 days, stating the place, time, and cause of the loss, damage, or expense, the interest of the Member and of all others, the value of the property involved in the loss, and the amount of loss, damage, or expense.

Section IV.E. of the General Conditions in the Property Coverage Document states:
If the Member and the Fund fail to agree as to the amount of loss, each shall, upon the written demand either of the Member or of the Fund made within 60 days after receipt of proof of loss by the Fund , select a competent and disinterested appraiser. The appraisers then shall select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon request of the Member or of the Fund , such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Member and the Fund shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

We do not have jurisdiction over an interlocutory order granting or denying a motion to compel appraisal. See Hodge v. Kraft , 490 S.W.3d 510, 516 (Tex. App.-San Antonio 2015, no pet.). Therefore, the analysis of this opinion is limited to whether the trial court erred in denying the Risk Pool's plea to the jurisdiction.

When read together, Sections 271.151(2)(B) and 271.153(c) only waive governmental immunity for a claim for specific performance for a claim for a breach of contract regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental immunity for industrial use. See City of San Antonio v. Hays St. Bridge Restoration Grp. , No. 04-14-00886-CV, 2017 WL 776112, at *5 (Tex. App.-San Antonio Mar. 1, 2017, pet. filed) (mem. op.).

See also Zachry Constr. Corp. , 449 S.W.3d at 110 ("We conclude that the Act does not waive immunity from suit on a claim for damages not recoverable under Section 271.153.").

We have rejected the Risk Pool's assertion that the City's request to enforce the appraisal provision is not a remedy permitted by Section 271.153.