

NUMBER 13-19-00096-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS MUNICIPAL LEAGUE
INTERGOVERNMENTAL RISK POOL,                                          Appellant,

v.

CITY OF HIDALGO,                                                      Appellee.

On appeal from the 139th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion by Chief Justice Contreras**

We issued our memorandum opinion and judgment in this matter on January 9,
2020. Appellant Texas Municipal League Intergovernmental Risk Pool (the Risk Pool) has
filed a motion for rehearing. Pursuant to our request, appellee the City of Hidalgo (the
City) filed a response to the motion. We deny the motion for rehearing but withdraw our

earlier memorandum opinion and judgment and substitute the following memorandum opinion and its accompanying judgment in their place.

The Risk Pool brings this interlocutory appeal of the trial court's order granting a motion filed by the City to compel the parties to participate in a contractual appraisal proceeding. The Risk Pool contends by one issue that the order constituted an implicit and erroneous denial of its plea to the jurisdiction. We affirm.

## I. BACKGROUND

The Risk Pool is a governmental self-insurance fund whose members include the City and nearly 2,800 other Texas political subdivisions. *See* TEX. GOV'T CODE ANN. § 2259.031. The City became a member of the Risk Pool by virtue of a "Liability/Property Interlocal Agreement" (the Agreement) signed in 1989. The Agreement stated in part:

> In consideration of the execution of this Agreement by and between the Pool Member and the Fund[1] and of the contributions of the Pool Member, the coverage elected by the Pool Member is afforded according to the terms of the TML Liability Self-Insurance Plan and the TML Property Self-Insurance Plan. The affirmative declaration of contributions and limits of liability in the Declarations of Coverage and Endorsements determines the applicability of the Self-Insurance Plans.

> Each Pool Member agrees to adopt and accept the coverages, provisions, terms, conditions, exclusions and limitations as further provided for in the TML Self-Insurance Plans or as specifically modified by the Pool Member's Declarations of Coverage.

> This Interlocal Agreement shall be construed to incorporate the TML Liability Self-Insurance Plan and/or the TML Property Self Insurance Plan, Declarations of Coverage, and Endorsements and addenda whether or not physically attached hereto.

The Agreement defines "TML Municipal Property Self-Insurance Plan" as "[t]he property

---

[1] The "Fund" refers to the Texas Municipal League Joint Self-Insurance Fund, which was later combined with other funds and renamed the Risk Pool. *Who We Are*, TEX. MUN. LEAGUE INTERGOV'TAL RISK POOL, https://www.tmlirp.org/who-we-are/ (last visited Mar. 10, 2020).

coverage document that sets forth in exact detail the coverages provided as part of the overall plan."

Here, the terms and conditions of the coverage provided by the Risk Pool to the City are set forth in a "Property Coverage Document" (the Coverage Document) dated October 1, 2014. The Coverage Document provides in relevant part:

IV. IN THE CASE OF LOSS

. . . .

D. PROOF OF LOSS

> *It shall be necessary for the Member to render a signed and sworn proof of loss to the Fund or its appointed representative, within 60 days*, stating the place, time, and cause of the loss, damage, or expense, the interest of the Member and of all others, the value of the property involved in the loss, and the amount of loss, damage, or expense.

E. APPRAISAL

> *If the Member and the Fund fail to agree as to the amount of loss, each shall, upon the written demand either of the Member or of the Fund made within 60 days after receipt of proof of loss by the Fund, select a competent and disinterested appraiser.* The appraisers then shall select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon request of the Member or of the Fund, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Member and the Fund shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

F. LOSS PAYABLE

> Loss, if any, shall be adjusted with and payable to the Member, whose receipt shall constitute a release in full of all liability under this Agreement with respect to such loss.

3

(Emphasis added.)

In 2016, a storm damaged State Farm Arena, which is owned by the City and covered by its Risk Pool policy. The City filed a claim with the Risk Pool for roof and structural damage caused by wind, hail, and water. According to the City, the arena sustained over $7 million in damages, but after adjustment, the Risk Pool paid out only $283,666.81 in benefits. In May of 2018, the City filed suit against the Risk Pool alleging that it breached the policy by wrongfully and negligently denying part of its claim. In particular, the City alleged that the Risk Pool failed to perform a thorough investigation of the damage as required by the policy. The City's petition contained a section entitled "Equitable Relief: Demand for Appraisal" which stated: "Pursuant to the Coverage Document and Tex. Local Gov't Code § 271.154, [the City] hereby demands Appraisal, and names the following appraiser: Mark Barber . . . ." In the alternative, the City requested damages, interest, and attorney's fees.

The Risk Pool answered the suit and filed a partial plea to the jurisdiction, contending that its governmental immunity to suit has not been waived with respect to the City's claims for equitable relief or attorney's fees. On August 6, 2018, the City filed a response to the partial plea to the jurisdiction as well as an amended petition, both contending that the Risk Pool's immunity was waived by Texas Local Government Code § 271.152 with respect to all of the City's claims. The amended petition stated: "Plaintiff names the following appraiser [sic] competent and disinterested appraiser: Don Staples . . . ."

Two days later, the City filed a "Motion to Compel Appraisal and Stay Proceedings Pending Appraisal" arguing that "completion of the appraisal process may preclude the need for further litigation" and that "judicial efficiency would be furthered by appraisal and

4

staying the litigation pending its completion." The City noted in its motion that the Risk Pool had "rejected the City's invocation of appraisal and refused to participate in the appraisal process" prior to the City's initial filing of suit. In response, the Risk Pool filed an "Objection and Plea to the Jurisdiction" arguing that: (1) local government code chapter 271 does not waive immunity to suits seeking equitable relief or specific performance; (2) chapter 271 does not waive immunity as to the City's breach of contract claim because the Coverage Document was not "executed" by the Risk Pool; and (3) even if immunity was waived, the City is not entitled to appraisal because it did not timely provide proof of loss or name a disinterested appraiser as required by the policy. The Risk Pool concurrently filed a separate amended plea to the jurisdiction reiterating the first two arguments. The City filed a response to the amended plea to the jurisdiction, and the Risk Pool filed a reply to the response.

On September 28, 2018, the trial court rendered an order granting the City's motion to compel appraisal, ordering the Risk Pool to designate its appraiser within seven days, and staying all further proceedings in the trial court until completion of the appraisal. This interlocutory appeal followed.

## II. APPELLATE JURISDICTION

The City argues that we lack jurisdiction over the appeal because the trial court never explicitly ruled on the Risk Pool's pleas to the jurisdiction. We address this issue first.

Unless an interlocutory appeal is authorized by statute, our jurisdiction extends only to the review of final judgments. *Bison Bldg. Materials, Ltd. v. Aldridge*, 422 S.W.3d 582, 585 (Tex. 2012). We strictly apply statutes granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not

5

immediately appealable. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011).

Under the civil practice and remedies code, a party may appeal an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).[2] Here, the trial court granted the City's motion to compel appraisal but did not explicitly rule on the Risk Pool's pleas to the jurisdiction. The City points out that there is no statute allowing the interlocutory appeal of an order compelling appraisal.

The City directs us to a very similar case involving appraisal under the same Coverage Document. *See Tex. Mun. League Intergov'tal Risk Pool v. City of Abilene*, 551 S.W.3d 337 (Tex. App.—Eastland 2018, pet. dism'd). There, the City of Abilene filed a wind and hailstorm claim with the Risk Pool and later sued, alleging that the Risk Pool failed to properly investigate and evaluate the damage. *Id.* at 341. As here, the City of Abilene moved to compel appraisal under the policy, and the Risk Pool filed a plea to the jurisdiction. *Id.* The trial court denied the plea to the jurisdiction and granted the motion to compel appraisal, and the Risk Pool appealed. *Id.* Prior to its discussion of the issues in the appeal, the Eastland court of appeals noted that, because there is no statutory authorization for an interlocutory appeal of an order compelling appraisal, its analysis would be limited to whether the trial court erred in denying the plea to the jurisdiction. *Id.* at 342 n.4.

Unlike in the *City of Abilene* case, the trial court here did not explicitly deny the City's plea to the jurisdiction. Nevertheless, as the Risk Pool notes, the Texas Supreme Court has held that a trial court's interlocutory ruling on the merits of a case operates as

---

[2] The Risk Pool is a governmental unit. *See Tex. Mun. League Intergov'tal Risk Pool v. City of Abilene*, 551 S.W.3d 337, 340 (Tex. App.—Eastland 2018, pet. dism'd).

an implicit denial of a plea to the jurisdiction and is subject to appeal under § 51.014(a)(8). *Thomas v. Long*, 207 S.W.3d 334, 339–40 (Tex. 2006) ("Because a trial court cannot reach the merits of a case without subject matter jurisdiction, a trial court that rules on the merits of an issue without explicitly rejecting an asserted jurisdictional attack has implicitly denied the jurisdictional challenge."). In *Thomas*, the trial court reached the merits by rendering a partial judgment stating that the plaintiff was entitled to be reinstated in his employment, though it did not explicitly rule on the defendant's jurisdictional plea. *Id.* at 337. Similarly, the trial court in this case reached the merits of the City's claims by ordering the parties to participate in appraisal pursuant to the terms of the Coverage Document.[3] Therefore, the trial court implicitly denied the Risk Pool's plea to the jurisdiction, and we have jurisdiction over the appeal.[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. SUBJECT MATTER JURISDICTION

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the asserted claims have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id.*; *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Whether a trial court has subject matter jurisdiction and whether the pleader

---

[3] As noted, an order compelling appraisal was the City's primary requested relief in its petition. The City requested damages only "[i]n the alternative" to the equitable relief claim.

[4] As in *City of Abilene*, we lack jurisdiction to consider the merits of the order compelling appraisal because there is no statute authorizing an interlocutory appeal of such an order. *See id.* at 342 n.4. Our analysis is limited to the question of whether the trial court had subject matter jurisdiction over the case generally. *See id.*

7

has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See id.* at 226, 228.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even when the evidence implicates the merits of the cause of action. *Id.* at 227; *Blue*, 34 S.W.3d at 555. In considering the evidence, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 227–28.

## B. Applicable Law

### 1. Sovereign Immunity

The doctrine of sovereign immunity holds that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)); *see Nevada v. Hall*, 440 U.S. 410, 414 (1979) ("The immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries. Only the sovereign's own consent could qualify the absolute character of that immunity.") Thus, unless waived by the legislature, sovereign immunity deprives a Texas court of subject matter jurisdiction over any lawsuit against a Texas governmental unit such as the Risk Pool. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011).

For the legislature to validly waive sovereign immunity, it must consent to suit by

8

"clear and unambiguous" statutory language. TEX. GOV'T CODE ANN. § 311.034; *Tooke*, 197 S.W.3d at 332–33. Any ambiguity in a statute must be resolved in favor of retaining immunity. *Tooke*, 197 S.W.3d at 330, 342; *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

> **2.  Chapter 271**

Chapter 271, subchapter I of the Texas Local Government Code (the Local Government Contract Claims Act, or the Act) clearly and unambiguously waives sovereign immunity for certain contract claims against local governmental entities. *See* TEX. LOC. GOV'T CODE ANN. § 271.151–.160. In particular, § 271.152 provides that a local governmental entity "that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." *Id.* § 271.152. As relevant here, a "contract subject to this subchapter" is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2)(A).

In a suit against a local governmental entity under chapter 271, "the total amount of money" the claimant may recover "is limited to the following":

> (1)    the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

> (2)    the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

> (3)    reasonable and necessary attorney's fees that are equitable and just; and

(4)      interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

*Id.* § 271.153(a). Damages awarded in such a suit "may not include: (1) consequential damages, except as expressly allowed under [§ 271.153](a)(1); (2) exemplary damages; or (3) damages for unabsorbed home office overhead." *Id.* § 271.153(b).

Section 271.154 states:

> Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.

*Id.* § 271.154.

### 3.    *Zachry* and Subsequent Cases

The Texas Supreme Court has held that, in order to invoke the chapter 271 waiver of immunity, the claimant "must plead facts with some evidentiary support that constitute a claim for which immunity is waived." *Zachry Const. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 110 (Tex. 2014). Immunity is not waived for claims which seek monetary damages that are impermissible under the statute. *See id.*; *Tooke*, 197 S.W.3d at 346 (finding immunity was not waived where claimants alleged breach of a contract subject to the Act but requested only consequential damages). That is because the waiver of immunity in chapter 271 is "subject to the terms and conditions of this subchapter," *see* TEX. LOC. GOV'T CODE ANN. § 271.152, and among those terms and conditions are the damages limitations in § 271.153. *See Zachry*, 449 S.W.3d at 109 ("Section 271.153's limitations on recovery are incorporated into Section 271.152 by its last 'subject to' clause and are thereby conditions on the Act's waiver of immunity.").

In *City of Abilene*, the Eastland court of appeals applied *Zachry* to determine whether immunity barred the City of Abilene's request to compel the Risk Pool to participate in a contractual appraisal process pursuant to the same Coverage Document at issue in this case. 551 S.W.3d at 341–46. As here, the Risk Pool cited *Zachry* in arguing that immunity was not waived as to the appraisal request because (1) it amounted to a request for specific performance, and (2) specific performance is not permitted as a remedy under § 271.153. *See id.* The court held that the motion to compel appraisal was not a request for specific performance; rather, it was a "contractual adjudication procedure" which is "enforceable" by any party under § 271.154. *Id.* at 345 (noting that "there is nothing in the language of Section 271.154 indicating that it can only be invoked by a governmental defendant"). The court disagreed with the Risk Pool's argument that, under *Zachry*, § 271.154 acts as a "limitation" on chapter 271's waiver of immunity. *See id.* (noting that the *Zachry* Court characterized § 271.154 as a "preservation of procedures" that "provides for enforcement of contractual adjudication procedures").

In *Mission Consolidated Independent School District v. ERO International, LLP*, 579 S.W.3d 123, 127 (Tex. App.—Corpus Christi–Edinburg 2019, no pet.), we declined to follow *City of Abilene*. In *ERO*, the defendant school district argued that chapter 271 did not waive its immunity to the claimant's breach of contract suit because the claimant did not timely comply with contractual adjudication procedures before filing suit. *Id.* at 126. We agreed that the claimant did not comply with the contract's adjudication procedures; therefore, the claimant did not show "a substantial claim that meets the Act's conditions" and the chapter 271 waiver of immunity did not apply. *Id.* at 127–28. Relying on *Zachry*, we held that § 271.154, regarding the enforceability of contractual adjudication procedures, operates as a "limitation" on the chapter 271 waiver:

11

We acknowledge that *Zachry*'s specific holding concerned section 271.153; however, we find that the court's reasoning is equally applicable to section 271.154. The court in *Zachry* stated that it was "obvious" that the "terms and conditions" of the Act serve as "limitations on the waiver of immunity." *Zachry*'s analysis and conclusion specifically concerned section 271.153, but it is heavily implied that all of the Act's subchapters serve as limitations on the waiver of immunity. For example, in categorizing the sections of the Act, the court in *Zachry* noted that sections 271.156, 271.157, 271.158, and 271.160 dealt specifically with the "scope of immunity," whereas sections 271.153, 271.154, and 271.155 dealt with the "litigation and adjudication of a claim." Nevertheless, despite only dealing with the "litigation and adjudication of a claim," the court ultimately held that section 271.153 was a "limitation" on the waiver of immunity and that immunity was not waived for claims that failed to meet the conditions of that section. In other words, a plaintiff must plead damages satisfying section 271.153 to invoke the Act's waiver of immunity. The court continued by observing that the Act only waives immunity for contract claims "that meet certain conditions:  the existence of a specific type of contract, a demand for certain kinds of damages, a state forum, etc. The waiver does not depend on the outcome, though it does require a showing of a substantial claim that meets the Act's conditions." We find the same analysis applicable to section 271.154:  even though section 271.154 is only related to "the litigation and adjudication of a claim," it is one of the Act's "conditions," and as such, serves as a limitation on the waiver of immunity. Accordingly, to show waiver of immunity, a claimant must plead facts showing that the conditions of section 271.154 have been met.

*Id.* at 127–28 (citations omitted). We observed that a contrary conclusion had been reached by the Eastland court of appeals in *City of Abilene* and by the Dallas court of appeals in *Romulus Group, Inc. v. City of Dallas*, No. 05-16-00088-CV, 2017 WL 1684631, at *6 (Tex. App.—Dallas May 2, 2017, pet. denied) (mem. op.) (holding that "the waiver of immunity is not dependent on compliance with section 271.154"). We explained, though, that both *City of Abilene* and *Romulus* were based on the holdings in *City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 448 (Tex. App.—Dallas 2008, pet. denied), and *Santa Rosa Independent School District v. Rigney Construction & Development, LLC*, No. 13-12-00627-CV, 2013 WL 2949566 (Tex. App.—Corpus Christi–Edinburg June 13, 2013, pet. denied) (mem. op.), both of which were later disapproved

12

of in *Zachry*. *See ERO*, 579 S.W.3d at 127. We elaborated:

> It is true that only section 271.153 was at issue in *Zachry*, not section 271.154. Thus, *Zachry* only directly repudiated *Santa Rosa* and *City of Mesquite* to the extent they concluded that compliance with section 271.153 does not affect waiver of immunity. However, it is important to note that the courts in *Santa Rosa* and *City of Mesquite* used the same analysis that was disapproved of in *Zachry* to conclude that section 271.154 also does not affect waiver of immunity. For this reason, we find *Zachry* controlling on the proper analysis. . . .
>
> . . . *Romulus* implies that sections 271.153, 271.156, and 271.157 are the only conditions on the waiver of immunity under the Act. However, *Zachry* stated, "[t]he Act waives immunity for contract claims that meet certain conditions: the existence of a specific type of contract [referring to section 271.157], a demand for certain kinds of damages [referring to section 271.153], a state forum [referring to section 271.156], etc." By adding "etc.," *Zachry* indicated that sections 271.153, 271.156, and 271.157 are not the only conditions on the waiver of immunity. In fact, *Zachry* specifically rejected interpretations of section 271.152 that would only incorporate some of, but not all, of the other sections in the Act. Just like section 271.153, section 271.154 is incorporated into section 271.152 by its last "subject to" clause; thus, section 271.154 is a "condition[] on the Act's waiver of immunity."

*Id.* at 128–29 (citations omitted).

The day after we handed down *ERO*, the Texas Supreme Court specifically held in *Hays Street Bridge Restoration Group v. City of San Antonio* that § 271.152 waives immunity for a claim for specific performance of a chapter 271 contract. 570 S.W.3d 697, 699 (Tex. 2019). That case involved a 2002 agreement executed by the City of San Antonio and a group of residents aiming to restore and preserve the landmark Hays Street Bridge. *Id.* at 700. Ten years later, the group sued, alleging that the city breached the agreement by failing to apply certain funds to the bridge project, and requesting only specific performance as a remedy. *Id.* at 700–01. Citing *Zachry*, the San Antonio court of appeals held that chapter 271 did not waive the city's immunity from a suit for specific performance, and it dismissed the case. *Id.* at 701 (citing *City of San Antonio v. Hays St.*

13

*Bridge Restoration Gp.*, 551 S.W.3d 755, 762–63 (Tex. App.—San Antonio 2017), *rev'd*, 570 S.W.3d at 706–708).

The Texas Supreme Court reversed, observing that § 271.153 "limits damages, not remedies," and "damages" means "money." *Id.* Though the § 271.152 waiver applies only to claims that request relief permitted by chapter 271—and though § 271.153 permits only certain types of damages—the statute does not purport to restrict the recovery of *non-monetary* forms of relief such as specific performance. *See id.* (holding that to read § 271.153 "as impliedly prohibiting every suit seeking an equitable remedy against a local governmental entity would too greatly restrict the general waiver of immunity" in § 271.152). Thus, the Act waived the city's immunity from suit on the claim for specific performance. *Id.*

## C. Analysis

### 1. Waiver of Immunity for Specific Performance

On appeal, the Risk Pool contends that the trial court "ignored" the framework established in *Zachry* and "created" a waiver of immunity beyond the scope of what was intended by the legislature. It argues that, by granting the City's motion to compel appraisal, the trial court granted the equitable relief of specific performance, and it contends that specific performance is not among the remedies permitted by chapter 271. Therefore, according to the Risk Pool, it retains immunity with respect to the City's motion to compel appraisal.

The Risk Pool acknowledges the ruling in *Hays Street* but contends that case is distinguishable because a different version of the statute applies. Because the contract at issue in *Hays Street* was executed in 2002, the Court in that case applied the original 2005 version of chapter 271. *See id.* at 699 n.2 (citing Act of May 23, 2005, 79th Leg.,

14

R.S., ch. 604, § 1, sec. 271.151(2), 2005 Tex. Gen. Laws 1548, 1548 (current version at TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A))). In 2013, the Texas Legislature amended § 271.153 to add subsection (c), which states: "Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B)." Act of May 24, 2013, 83rd Leg., R.S., ch. 1138, § 3, 2013 Tex. Gen. Laws 2756, 2758 (codified at TEX. LOC. GOV'T CODE ANN. § 271.153(c)). Section 271.151(2)(B), enacted in the same law, expands the definition of "contract subject to this subchapter" to include "a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use." *Id.* § 2 (codified at TEX. LOC. GOV'T CODE ANN. § 271.151(2)(B)). We assume but do not decide that these amendments apply here.[5]

It is undisputed that the contract at issue in this case is not of the type described in § 271.151(2)(B). Thus, § 271.153(c) does not serve to explicitly authorize the award of specific performance. But *Hays Street* held that the § 271.152 waiver—which has not been amended—extends to claims for specific performance of a chapter 271 contract.

---

[5] It is unclear which version of the statute applies in this case. The 2013 amendments apply only to "a claim that arises under a contract executed on or after the effective date of this Act," i.e., May 24, 2013. Act of May 24, 2013, 83rd Leg., R.S., ch. 1138, § 4(c), 2013 Tex. Gen. Laws 2756, 2758. "A claim that arises under a contract executed before the effective date of this Act is governed by the law in effect on the date the contract was executed, and the former law is continued in effect for that purpose." *Id.* Here, the only contract in the record that was signed on behalf of the City was the original 1989 Agreement. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A) (stating that a "contract subject to this subchapter" must be, among other things, "properly executed on behalf of the local governmental entity"); *Hous. Auth. of City of Dallas v. Killingsworth*, 331 S.W.3d 806, 811 (Tex. App.—Dallas 2011, pet. denied) (noting that a contract is "properly executed" when it is "signed in accordance with the requirements for making it correct or valid"). In its response to the Risk Pool's plea to the jurisdiction, filed before *Hays Street* was handed down, the City acknowledged that "it was the intent of the parties that the signature attached [to the 1989 Agreement] would be given a new effect each Fund Year" and, therefore, "a new contract was executed on October 1, 2015." In its appellee's brief, the City neither cites *Hays Street* nor addresses whether the 2013 amendments apply.

15

*See* 570 S.W.3d at 708. The question we must answer, therefore, is whether the enactment of §§ 271.151(2)(B) and 271.153(c) abrogates this ruling. The *Hays Street* Court explicitly declined to address this question. *See id.* at 708 n.65 (noting that the City of San Antonio argued "that 2013 amendments to the Act waiving immunity for specific performance of one type of contract indicates that immunity is not waived for any other," but not addressing the argument because the 2013 amendments apply "only prospectively").

The Risk Pool observes that § 271.153(c) is the "only place where the Legislature has chosen to expressly waive governmental immunity from claims for equitable relief and, particularly, specific performance." It argues that, under rules of statutory construction, the enactment of § 271.153(c) "reflects an express legislative decision to waive that government immunity for only a defined and very limited set of claims for equitable relief, and that equitable relief remains unavailable in any other cases, like this one, which do not involve a water reclamation contract specified in Section 271.153(c)." *See ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 876 (Tex. 2018) (discussing the interpretative canon of *expressio unius est exclusio alterius*, i.e., "the express mention of one thing excludes another"). In response, the City argues that its request to compel appraisal was not a demand for specific performance—instead, it is a "contractual adjudication procedure," which is "enforceable" under § 271.154.

Even assuming the order on appeal constitutes an award of specific performance, we nevertheless find that the 2013 amendments to chapter 271 do not abrogate the holding in *Hays Street*. The only section of the Act which waives immunity is § 271.152, and that section has not been amended. *Zachry* held that, because the chapter 271 waiver is "subject to the terms and conditions of the Act," immunity is not waived for claims

16

which request damages that are impermissible under § 271.153. *See Zachry*, 449 S.W.3d at 109. But the 2013 amendments do not explicitly restrict the availability of equitable relief or specific performance. Had the legislature intended to restrict the availability of equitable relief or specific performance to cases involving water contracts under § 271.152(2)(B), it could have easily done so using the unambiguous, unmistakable language which the statute already employs to limit the availability of money damages. *Compare* TEX. LOC. GOV'T CODE ANN. § 271.153(a) (stating that "the total amount of money awarded . . . is limited to the following . . .") *and id.* § 271.153(b) ("Damages awarded . . . may not include . . .") *with id.* § 271.153(c) ("Actual damages, specific performance, or injunctive relief may be granted . . . .").

Moreover, "the force of any negative implication" based on the *expressio unius* canon "depends on context." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 429 (Tex. 2017) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013)). The canon "does not apply unless it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it." *Id.* The intent of the legislature "must be expressed clearly, either explicitly or by necessary implication." *Id.* We cannot conclude that the legislature intended to restrict the availability of equitable relief or specific performance by enacting the 2013 amendments. The amendments do not explicitly do so, and such restriction is not necessarily implied. Instead, as set forth in *Hays Street*, the waiver of immunity in chapter 271 extends to claims for specific performance of a contract subject to the Act.[6]

---

[6] We note that, unlike here, the award of specific performance in *Hays Street* was made after a full trial on the merits. *See Hays St. Bridge Restoration Gp. v. City of San Antonio*, 570 S.W.3d 697, 701 (Tex. 2019). The Risk Pool does not argue in its brief that *Hays Street* is distinguishable for this reason. In any event, we note that contractual appraisal provisions in insurance policies are treated like arbitration clauses and may generally be enforced prior to trial as a means to resolve disputes about the amount of loss for a

The Risk Pool emphasizes that, as we held in *ERO*, § 271.154 serves as a "condition[] on the Act's waiver of immunity" and does not create an additional waiver of immunity. *See ERO*, 579 S.W.3d at 129. That is true, and we continue to disavow *City of Abilene*'s implications to the contrary. But our decision here does not assume or rely on the notion that an additional waiver is created under § 271.154; instead, our holding is based on the clear and unambiguous general waiver in § 271.152 combined with the lack of any provision elsewhere in the Act explicitly limiting or restricting the availability of equitable relief or specific performance.

### 2. Compliance with Contractual Adjudication Procedures

In its motion for rehearing, the Risk Pool argues that the City did not show a "substantial claim that meets the Act's conditions" because it failed to comply with the "contractual adjudication procedures" set forth in the Coverage Document. *See Zachry*, 449 S.W.3d at 109 (holding that the chapter 271 waiver "require[s] a showing of a substantial claim that meets the Act's conditions"); *ERO*, 579 S.W.3d at 128 ("[T]o show waiver of immunity, a claimant must plead facts showing that the conditions of section 271.154 have been met."); *see also* TEX. LOC. GOV'T CODE ANN. § 271.154 ("Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit . . . are enforceable except to the extent those procedures conflict with the terms of this subchapter.").[7] In particular, the Risk Pool

---

covered claim. *See City of Abilene*, 551 S.W.3d at 344 ("In the context of an insurance contract, appraisal is not sought in equity as a substitute for inadequate monetary damages, but rather it is a procedural vehicle provided by the contract to determine the amount of loss."); *Vanguard Underwriters Ins. Co. v. Smith*, 999 S.W.2d 448, 451 (Tex. App.—Amarillo 1999, no pet.) (holding that insurance policy appraisal clause was "in its essence, one requiring arbitration" and applying caselaw relating to arbitration clauses); *see also In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding) (noting that "[a]ppraisals can provide a less expensive, more efficient alternative to litigation" and "should generally go forward without preemptive intervention by the courts").

[7] In its pleas to the jurisdiction and its appellate briefs, the Risk Pool did not explicitly argue that the

argues that the City did not timely (1) file a sworn proof of loss, (2) demand appraisal, or (3) designate a disinterested appraiser.

In its appellate brief and in response to the motion for rehearing, the City argued in part that the Risk Pool waived its right to enforce the proof-of-loss provision.[8] We agree. "[P]rovisions of an insurance policy regarding notice and proof of loss are for the benefit of the insurance company and may be waived by it." *Sanders v. Aetna Life Ins. Co.*, 205 S.W.2d 43, 44–45 (Tex. 1947). "[A] denial by [the insurer] of liability under the policy is a waiver of proof of loss enabling the insured to maintain a suit on the policy without furnishing such proof." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 144 n.18 (Tex. 1994) (citing *Sanders*, 205 S.W.2d at 45).

> It is a well-known principle . . . that the acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him.

*Scottish Union & Nat'l Ins. Co. v. Clancey*, 18 S.W. 439, 440–41 (Tex. 1892). For purposes of establishing waiver of a proof-of-loss provision,

> it is of no consequence whether the insurance company informs the insured that the claim absolutely will not be paid or simply indicates that it is not

---

chapter 271 waiver is inapplicable because the City failed to comply with contractual adjudication procedures or any other requirements of the Coverage Document. Instead, it argued that the City *did not show its entitlement to appraisal* for those same reasons. But as noted above, our inquiry here is limited to whether the trial court had subject matter jurisdiction over the City's suit in general—it does not encompass the specific question of whether the City is entitled to appraisal. An appellant may not use a motion for rehearing to raise new issues. *FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 485 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Phifer v. Nacogdoches Cty. Cent. Appraisal Dist.*, 45 S.W.3d 159, 166 (Tex. App.—Tyler 2000, pet. denied). Nevertheless, because the issues are closely intertwined, we choose to address the argument made in the Risk Pool's motion for rehearing.

[8] In addition to its waiver argument, the City also contends in its brief that (1) the proof-of-loss provision does not state when the sixty-day compliance period begins, and (2) the Risk Pool failed to show that it was prejudiced by the City's failure to submit proof of loss. *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636–37 (Tex. 2008) ("[A]n insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."). The City made all of these arguments in response to the Risk Pool's contention that the City was not entitled to appraisal because it had not complied with the requirements of the Coverage Document.

planning to pay the claim unless some new development arises. It is enough that the actions of the insurance company would reasonably lead the insured to believe that the company is not going to pay the claim because of some reason other than failure to file the required proof of loss.

*De Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 720 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Here, the Coverage Document states in section IV.G that "[a]ll adjusted claims shall be due and payable no later than 60 days after presentation and acceptance of proofs of loss by the Fund or its appointed representative." And the evidence established the Risk Pool paid the City $283,666.81 in benefits under the Coverage Document on June 27, 2016. Along with the payment, the Risk Pool sent the City a "Sworn Statement in Proof of Loss" form, lacking only the signature of a City representative, stating that the total "amount claimed" is $283,666.81. The letter accompanying the payment asked the City's representative to "sign and return the enclosed Proof of Loss in the envelope provided."

By paying out benefits before receiving a sworn proof of loss, the Risk Pool indicated to the City that its compliance with the proof-of-loss provision "would be of no effect." *See Clancey*, 18 S.W. at 440–41. Moreover, by paying out a particular sum of benefits and asking the City to sign a pre-completed proof-of-loss form limited to that sum, the Risk Pool indicated to the City that it would not pay any benefits beyond that sum, whether or not any proof of loss was ever submitted. That is, the Risk Pool decided to deny any additional benefits for "some reason other than failure to file the required proof of loss." *See De Laurentis,* 162 S.W.3d at 720.[9]

---

[9] The proof-of-loss form stated: "The furnishing of this blank or the preparation of proofs by a representative of the above self-insurance fund is not a waiver of any of its rights." But this does not change the fact that, by providing the pre-completed form, the Risk Pool indicated to the City that it would be futile to submit proof of loss in an amount greater than the benefits which were already paid out.

We conclude that the Risk Pool has waived its ability to enforce the proof-of-loss provision in the Coverage Document. *See Sanders*, 205 S.W.2d at 44–45. Accordingly, for purposes of the waiver of immunity in chapter 271, the proof-of-loss provision is not a "contractual adjudication procedure" with which the City was required to comply. Further, the timelines in the Coverage Document concerning demand for appraisal and naming of appraisers are triggered only when proof of loss is actually submitted. Thus, we cannot conclude that the City failed to comply with the "adjudication procedures" of the Coverage Document by failing to timely demand appraisal or name a disinterested appraiser. For the foregoing reasons, the City has shown a "substantial claim that meets the Act's conditions." *See Zachry*, 449 S.W.3d at 109.

## III. CONCLUSION

We conclude that the trial court did not err by denying the Risk Pool's plea to the jurisdiction.[10] We overrule its issue on appeal and affirm the judgment of the trial court.

DORI CONTRERAS
Chief Justice

Delivered and filed the
12th day of March, 2020.

---

[10] We express no opinion on the merits of whether the City is entitled to appraisal. Rather, as noted, this opinion is limited to whether the trial court had jurisdiction in this case.

21